IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| C.C. through his natural mother and guardian, MELANIE GINNEVER,<br><br>    Plaintiff,<br><br>v.<br><br>SUZUKI MANUFACTURING OF AMERICA CORPORATION<br><br>    Defendant. | Case No. 4:16-cv-1271 |

**PLAINTIFF'S RULE 30(b)(6) NOTICE OF VIDEO DEPOSITION *DUCES TECUM*
OF CORPORATE REPRESENTATIVE(S) OF DEFENDANT SUZUKI
<u>MANUFACTURING OF AMERICA CORPORATION</u>**

TO:                            Attorneys of Record

DATE/TIME:          On or before March 31, 2017 at 9:00 a.m.

DEPONENT:         Corporate Representative(s) of Suzuki Manufacturing of America Corporation

LOCATION:           TBD

COURT REPORTER:     TBD

**PLEASE TAKE NOTICE** that the attorneys for Plaintiff will take the video deposition of one or more persons to be designated by you and who consent(s) to and is/are authorized to speak on your behalf, pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, before a certified court reporter and a notary public duly authorized to administer oaths. Such person or persons will be asked questions and to testify about the following subjects and to produce the documents identified herein.

## **PRELIMINARY DEFINITIONS**

1.      Whenever the terms "writing," "document," "correspondence," "memoranda," "minutes," "claim," and "complaint" are used, they shall be meant to include the original copy of any written, printed, recorded, graphic or photographic matter of any kind, any drawing, sketch, schematic, or diagrammatic rendering or other descriptive material, or any retrievable data or information, however stored, recorded or coded which is now or was at any time in your possession, custody or control or in the actual or constructive possession or custody or control of your attorneys, investigators, experts, or consultants who have any information or knowledge.

2.      Whenever the terms "Defendant," "you," "your" and "SMAC" are used, they refer to Suzuki Manufacturing of America Corporation, whose corporate designee will be appearing at the deposition.  This shall include all predecessors of said party and the past and present subsidiaries and parents, agents, servants, and employees and unless privileged, counsel for said party.

3.      Whenever you are requested to provide any information which is stored in a computer or electronic file or data compilation, whether or not there is a specific request for "electronic media," state the title, format, disk number, electronic location, physical location, custodian of and person(s) with access to the file or data compilation.

4.      Whenever you are requested to produce or identify "electronic media," that term shall refer to all information created, transferred to or from and/or stored in a computer or electronic file, or data compilation, or voice mail or any other recorded messaging service; state the title, format, disc number, electronic location, physical location, custodian of and persons with access to the file or data compilation. "Electronic media" shall also include the physical backup tapes and all other archival media, all magnetically and optically recorded documents, all

archival copies, all electronically created or recorded documents, and all documents that have been logically deleted but not physically erased.

5. Whenever in this Notice the term "Subject ATV" is used, it refers to the 2013 Suzuki KingQuad ATV described in Plaintiff's Complaint, also known as 2013 model year LT-F400F ATV.

6. Whenever in this Notice the term "Substantially similar ATV" is used, it refers to any all-terrain vehicle (ATV), also known as a quad, quad bike, three-wheeler, four-wheeler, or quadricycle, defined by the American National Standards Institute (ANSI) as a vehicle that travels on low-pressure tires, with a seat that is straddled by the operator, along with handlebars for steering control, that is or has been manufactured by SMAC or its predecessors.

7. Whenever in this Notice the term "method of attachment" is used, it means the manner in which the Subject ATV's or a Substantially similar ATV's handlebar grips are attached, secured, glued, adhered to, or otherwise fastened to the handlebars.

## PRELIMINARY GENERAL INSTRUCTIONS

1. You will be asked at the deposition to detail the departments and areas searched for documents and/or information.

2. You are hereby requested to separate the documents into the categories indicated by the separate numbered paragraphs below. You are also hereby requested to "bates stamp" each document produced.

3. Production of any information or thing called for shall include all materials, "electronic media," films of any kind, data, emails, computer generated graphics, information stored on film or in a computer or computer related source and any and all other information without regard to form or location, including the knowledge of Defendants and their employees,

3

agents and representatives.  If any requested information existed at one time and is no longer available, you shall so indicate and provide a definite statement at the deposition setting forth in detail:

      a.    The content, including date, nature and purpose of the material and substance of the information that is no longer available and the inclusive dates it existed; and

      b.    The date, time and reason for its destruction.  If destroyed pursuant to a "policy" of the Defendant, provide a true copy of the "policy," the inclusive effective dates of the policy and the person or persons responsible for enacting the policy.

4.    YOU ARE NOT required to produce again documents previously provided in discovery.  However, you will be asked to verify the completeness of the document production and the search for responsive documents and to identify, testify about the content of, and authenticate the documents.

## TESTIMONY

Defendant Suzuki Manufacturing of America Corporation, (hereinafter "SMAC") shall designate one or more officers, directors or managing agents, or other persons who consent to testify on its behalf regarding the following matters:

**I.**    **DESIGN, MANUFACTURE AND SALE**

1.    When and by whom this model ATV was designed;

2.    How long and by whom this model ATV wheel has been manufactured;

3.    How and long and by whom this model ATV has been sold;

4.    The design of the handlebars and handlebar grips on the Subject ATV, including their interrelationship to one another, the respective sizes and dimensions of each, and the material make-up of each.

5.    The design of the handlebars and handlebar grips on substantially similar ATVs,

4

including their interrelationship to one another, the respective sizes and dimensions of each, and the material make-up of each.

6. The manufacture of the handlebars and handlebar grips on the Subject ATV, including the method of attachment for the handlebar grips.

7. The manufacture of the handlebars and handlebar grips on substantially similar ATVs, including the method of attachment for the handlebar grips.

8. The glue or bond used to fasten the handlebar grips to the handlebars on the Subject ATV, and the costs associated with same.

9. The glue or bond used to fasten the handlebar grips to the handlebars on different model years of the Subject ATV, and the costs associated with same.

10. Other methods of attachment used to fasten the handlebar grips to the handlebars on different model years of the Subject ATV, and the costs associated with same.

11. All methods of attachment used to fasten the handlebar grips to the handlebars on substantially similar ATVs, and the costs associated with same.

12. Alternative feasible methods of attachment to fasten the handlebar grips to the handlebars on the Subject ATV or substantially similar ATVs, and the costs associated with same.

13. All of Defendant's policies and procedures regarding the method of attachment of handlebar grips to handlebars on ATVs.

14. All of Defendant's policies and procedures regarding the securement of handlebar grips to handlebars on ATVs.

15. The purpose or safety goals for the handlebar grips on the Subject ATV and substantially similar ATVs.

16. The purpose, safety considerations, and importance of ensuring that handlebar grips are securely fastened to the handlebars on the Subject ATV and substantially similar ATVs.

17. The risks posed to a user, rider, passenger or others if a handlebar grip slips off the handlebar.

18. Any and all precautions Defendant took at any time to guard or protect against the risk of a handlebar grip slipping off the handlebar on its ATVs.

19. All design and/or manufacturing changes made to the handlebars and handlebar grips on subsequent models of the Subject ATV, including those related to the method of attachment for the handlebar grips, and the rationale for said changes.

20. Any and all regulations, codes, recommended practices, rules, or industry standards related to or relied upon by Defendant regarding the design or manufacture of handlebars and handlebar grips on the Subject ATV or other ATVs Defendant manufactures.

21. Any and all industry organizations and/or trade associations in which Defendant or its employees participate and whether Defendant or its employees have participated in any way in the creation of any standards, codes, regulations, or recommended practices, whether public or private, which relate to the design or manufacture of handlebars and handlebar grips on ATVs.

22. The sale of the Subject ATV.

23. The propensity or foreseeability of the subject ATV rolling over, tipping over, crashing, or leaning to a side while in use.

24. The expected or foreseeability lateral forces applied to the handlebar grips on the Subject ATV and substantially similar ATVs during use.

25. The expected or foreseeable ages and weights of users of the Subject ATV and

substantially similar ATVs.

26. The proper or recommended method prescribed by Defendant to detect whether handlebar grip needs to be replaced or re-secured to the handlebar, including the bases for each such recommended and/or prescribed method, and how same was conveyed to customers, users and/or the public.

**II.    TESTING**

27. All testing performed on the handlebars and handlebar grips on the Subject ATV, including their interrelationship to one another.

28. All testing performed on the handlebars and handlebar grips of substantially similar ATVs.

29. All testing of the method of attachment for the handlebar grips on the Subject ATV.

30. All testing of the method of attachment for the handlebar grips on substantially similar ATVs.

31. All testing regarding the consequences of having hollow handlebar ends on the Subject ATV.

32. All testing regarding the consequences of having hollow handlebar ends on substantially similar ATVs.

33. All testing proposed or considered, but never adopted by Defendant, to test the method of attachment for the handlebar grips on the Subject ATV or substantially similar ATVs, or the consequences of a handlebar grip slipping off.

34. All crashworthiness or rollover testing for the Subject ATV that relates to the securement of handlebar grips.

35. All crashworthiness or rollover testing for substantially similar ATVs that relates to the securement of the handlebar grips.

36. All protocols involved in testing responsive to the above topics.

37. Any Design Failure Mode Effects Analysis, Failure Mode and Effects Analysis, fault tree analysis, root cause analysis, and risk hazard analysis with regards to the securement of handlebar grips to handlebars on the Subject ATV or substantially similar ATVs.

**III.   SIMILAR INCIDENTS AND CLAIMS**

38. All claims, including lawsuits, reports, complaints, etc., made against or to Defendant that the Subject ATV, including other model years of the Subject ATV, was defective for reasons relating to the handlebar grips or handlebars.

39. All claims, including lawsuits, reports, complaints, etc., made against or to Defendant that the substantially similar ATVs were defective for reasons relating to the handlebar grips or handlebars.

40. All claims, including lawsuits, reports, complaints, etc., made against or to Defendant wherein it was alleged that a handlebar grip came off the handlebar on the Subject ATV, including other model years of the Subject ATV.

41. All claims, including lawsuits, reports, complaints, etc., made against or to Defendant wherein it was alleged that a handlebar grip came off the handlebar on substantially similar ATVs.

42. All instances where the subject model ATV or substantially similar ATVs rolled or tipped over.

43. All instances where the handlebar grips slipped off the handlebars on the subject model ATV or substantially similar ATVs.

44. All actions Defendant took in response to any allegation that the handlebar grips can slip off the handlebars on the subject model ATV or substantially similar ATVs.

45. All of Defendant's policies and procedures regarding documentation and investigation of claims, including lawsuits, reports, complaints, etc., involving its ATVs.

46. All of Defendant's policies and procedures regarding compiling instances of injuries involving its ATVs.

### IV. MISCELLANEOUS

47. The nature and scope of the business of Defendant, including:

    a. The number and location of each office;

    b. The existence, identity, and relationship of Defendant to any parent company, subsidiary, affiliate, or division;

    c. Any predecessor companies to Defendant;

    d. The structure and organization of Defendant now and at all times relevant to Plaintiffs' Complaint, and whether organizational charts depicting such organization exists.

48. The identity of all insuring and indemnity agreements that would cover the liability of this Defendant in this action.

49. The authenticity and contents of all documents produced and/or used in this case and the identity of the custodian(s) of such materials.

### REQUEST FOR PRODUCTION

1. All documents referenced, referred to, relied upon or identified in any area of testimony inquired upon above.

Respectfully Submitted,

By: /s/ Timothy M. Cronin
John G. Simon, #35321 MO
Timothy M. Cronin, #63383 MO
John M. Simon, #68393 MO

9

THE SIMON LAW FIRM, PC
800 Market Street, Suite 1700
St. Louis, MO 63101
Telephone:  314-241-2929
jsimon@simonlawpc.com
tcronin@simonlawpc.com
jmsimon@simonlawpc.com
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was sent on this 2nd day of February, 2017 to the following counsel of record via:

\_\_\_\_\_ U.S. mail, postage prepaid;
\_\_X\_\_ E-mail;
\_\_\_\_\_ facsimile transmission.

**THOMPSON COBURN, LLP**
Carl J. Pesce
Benjamin S. Harner
One US Bank Plaza
St. Louis, MO 63101
314-552-6000
cpesce@thompsoncoburn.com
bharner@thompsoncoburn.com

*Attorney for Defendant
Suzuki Manufacturing of America Corporation*

/s/ Timothy M. Cronin_____
