**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| C.C., through his natural mother and guardian, MELANIE GINNEVER, | ) ) ) | |
| Plaintiff(s), | ) ) | |
| v. | ) ) | No. 4:16CV01271 ERW |
| SUZUKI MANUFACTURING OF AMERICA CORPORATION, et al., | ) ) ) | |
| Defendant(s). | ) | |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendant Suzuki Motor Corporation's Motion to Dismiss [52].

## I.      BACKGROUND

On August 4, 2016, Plaintiff C.C., through his mother and natural guardian, Melanie Ginnever, filed a complaint in this District alleging Defendants Suzuki Motor of America, Inc. ("SMAI") and Suzuki Manufacturing of America Corporation ("SMAC") sold a defective all-terrain vehicle ("ATV") that was unreasonably dangerous when put to its reasonably anticipated use and these Defendants were negligent in designing, manufacturing, marketing, suppling, selling, leasing and otherwise distributing and placing in the stream of commerce the subject ATV [ECF No. 1]. Plaintiff voluntarily dismissed SMAI and on June 21, 2017, filed an amended complaint adding Suzuki Motor Corporation ("SMC") as a defendant [ ECF No. 41]. The following counts are included in the amended complaint: (1) Strict Product Liability against SMAC; (2) Negligence against SMAC; (3) Strict Product Liability against SMC; and (4) Negligence against SMC.

For purposes of this Motion to Dismiss, the Court accepts as true the following facts alleged in Plaintiff's amended complaint. *Great Rivers Habitat Alliance v. Fed. Emergency Mgmt. Agency*, 615 F.3d 958, 988 (8th Cir. 2010). On July 19, 2015, Plaintiff was driving a 2013 Suzuki KingQuad ATV, VIN 5SAAK4CAAD7100094 ("the subject ATV") near Silva, Missouri. As Plaintiff drove the subject ATV up an embankment, he lost control. When he gripped the handlebars, the left rubber handlebar grip slipped off, exposing the metal handlebar. The exposed handlebar impaled Plaintiff's left leg, severing his femoral artery. Plaintiff is a citizen and resident of Missouri. SMAC is incorporated in Georgia, with its principal place of business in Georgia. SMC is a Japanese Corporation, with its principal place of business in Japan.

SMC filed the pending Motion to Dismiss challenging the Court's jurisdiction arguing Plaintiff failed to properly serve SMC and the Court lacks personal jurisdiction over SMC.

## II.    STANDARD

"A federal court may exercise jurisdiction over a foreign defendant only to the extent permitted by the forum state's long-arm statute and by the Due Process Clause of the Constitution." *Miller v. Nippon Carbon Co.*, 528 F.3d 1087, 1090 (8th Cir. 2008) (internal quotations and citation omitted). The Missouri Supreme Court has held a court must analyze whether a defendant's conduct is covered by the Missouri long-arm statute and if it comports with due process in two separate inquiries. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 909 (8th Cir. 2012) (citing *Bryant v. Smith Interior Design Grp., Inc.*, 310 S.W.3d 227, 231 (Mo. 2010)).

Where personal jurisdiction is controverted, the party asserting jurisdiction bears the burden of establishing a prima facie case that jurisdiction exists. *Fastpath, Inc. v. Arbela Tech., Corp.*, 760 F.3d 816, 820 (8th Cir. 2014) Thus, "[t]o survive a motion to dismiss, the plaintiff

must state sufficient facts in the complaint to support a reasonable inference that [the defendant] may be subjected to jurisdiction in the forum state." *Steinbuch v. Cutler*, 518 F.3d 580, 585 (8th Cir. 2008) (internal citation omitted). "The plaintiff's 'prima facie showing' must be tested, not by the pleadings alone, but by the affidavits and exhibits presented with the motions and opposition thereto." *Dever v. Hentzen Coatings, Inc.*, 380 F.3d 1070, 1072-73 (8th Cir. 2004) (internal quotations and citation omitted). Personal jurisdiction can be established through either general or specific jurisdiction. *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

## III.    DISCUSSION

In its Motion to Dismiss, SMC asserts two arguments as to why the Court lacks jurisdiction over SMC. First, SMC argues Plaintiff failed to properly serve SMC, because Plaintiff served Carl Pesce and Bruce McCall, who are not registered agents for SMC. Second, SMC contends the Court lacks personal jurisdiction over SMC, because SMC is a Japanese corporation, with its principal place of business in Japan, and it has no contacts with Missouri. The Court will address the issue of personal jurisdiction first, and then the lack of service argument.

### A.    *Personal Jurisdiction*

SMC asserts the Court lacks general and specific jurisdiction under the Due Process Clause of the Fourteenth Amendment of the United States Constitution and the Missouri long-arm statute. Plaintiff argues maintenance of this suit in Missouri does not offend traditional notions of fair play and substantial justice. As stated *supra*, the Court must conduct separate inquiries into whether it has jurisdiction under Missouri's Long-Arm statute and pursuant to due process standards in the United States Constitution.

#### 1.    Missouri Long-Arm Statute

The Missouri Long-Arm statute states a corporation submits to the jurisdiction of the courts in Missouri for any cause of action arising from "(1) the transaction of any business within this state; (2) the making of any contract within this state; [or] (3) the commission of a tortious act within this state . . ."[1] Mo. Rev. Stat. § 506.500. This statute extends jurisdiction to the limits of the Due Process clause for the acts within its enumerated categories. *Mitchell v. Eli Lilly & Co.*, 159 F.Supp.3d 967, 974 (E.D. Mo. 2016) (citing *Dairy Farmers of Am., Inc. v. Bassett & Walker Int'l, Inc.*, 702 F.3d 472, 475 (8th Cir. 2012)). Missouri courts have interpreted the statute to include "extraterritorial acts" producing actionable consequences in Missouri. *Myers v. Casino Queen, Inc.*, 689 F.3d 904, 910 (8th Cir. 2012). Here, the actionable consequence occurred in Missouri when Plaintiff was injured by the subject ATV. Therefore, if personal jurisdiction is found under the Due Process Clause in this matter, it is also proper under the Missouri long-arm statute.

2.      Due Process Clause

Under the Due Process Clause, a court may find general or specific personal jurisdiction. General jurisdiction is a court's power to hear any matter in which the party is involved. *Yaeger v. Wyndham Vacation Resorts*, No. 4:14-CV-795-JCH, 2014 WL 3543426 at *2 (E.D. Mo. Jul. 17, 2014). General jurisdiction is always present in the corporation's domicile, which is its place of incorporation and its principal place of business. *Daimler AG*, 134 S. Ct. at 760. The test for establishing general jurisdiction outside of the corporation's domicile is whether the corporation's contacts with the state are so "continuous and systematic" as to make it essentially at home in the forum state. *Id*. at 761. There is no general jurisdiction over SMC in Missouri. SMC is incorporated in Japan and its principal place of business is in Japan. The facts, as

---

[1] The Missouri long-arm statute includes additional subsections which have no applicability to this suit.

presented to the Court, do not establish SMC's contacts with Missouri are so continuous and systematic to make it essentially at home in Missouri. Even though there is no general jurisdiction in Missouri, personal jurisdiction may still be established through specific jurisdiction.

Specific jurisdiction is a court's power over the party as it relates to the specific matter before it. *Yaeger*, 2014 WL 3543426 at *2. A court does not have power over the defendant for all claims, but it may have power over it with regard to specific claims, because of the relationship between the defendant, the forum, and the litigation. *Daimler AG*, 134 S. Ct. at 758. To establish specific jurisdiction "[t]he suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co.*, 137 S. Ct. at 1780 (internal quotations omitted). The Eighth Circuit has identified five factors to analyze to determine if a defendant has a substantial connection with a forum state: (1) the nature and quality of the contacts with the forum state; (2) quantity of the contacts, (3) relation of the cause of action to those contacts, (4) interest of the forum state in providing a forum for its residents, and (5) convenience of the parties. *Keeley v. Pfizer Inc.*, No. 4:15-CV-00583 ERW, 2015 WL 3999488 at *3 (E.D. Mo. Jul. 1, 2015) (citing *Johnson v. Woodcock*, 444 F.3d 953, 956 (8th Cir. 2006)). The factors are interrelated and the Eighth Circuit often considers them together. *Estate of Moore v. Carroll*, 159 F.Supp.3d 1002, 1008 (D. S.D. 2016) (citing several Eighth Circuit cases).

The analysis for specific jurisdiction requires a close examination of SMC's contacts in Missouri. SMC designed and sold the parts used to make the subject ATV to SMAC, who assembled the subject ATV, according to SMC's design. SMAC then sold the subject ATV to American Suzuki Motor Corporation ("ASMC"), the sole distributor, at the time the subject

ATV was sold, of Suzuki ATVs.[2] ASMC sold and shipped the subject ATV to Big St. Charles Motor Sports, an authorized Suzuki dealer where it was purchased by Plaintiff's uncle. SMAC is owned by two entities SMC and SMAI. SMC owns twenty percent and SMAI owns eighty percent. SMAI is a wholly-owned subsidiary of SMC. SMC does not have offices in Missouri, does not have any employees in Missouri, does not maintain a registered agent in Missouri, is not registered as a business in Missouri, and does not own or rent any property in Missouri. The question posed by the parties is whether these connections are enough to establish personal jurisdiction.

Courts have struggled to apply the "stream of commerce theory" for specific jurisdiction since the United States Supreme Court first suggested it in *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980), when it held a forum state may exercise personal jurisdiction over an out-of-state corporation who "delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state." The Supreme Court revisited the issue in *Asahi Metal Industry Company, Ltd. v. Superior Court of California, Solano County*, 107 S. Ct. 1026 (1987). In a plurality opinion, with three justices joining, Justice O'Connor narrowed the stream of commerce theory by stating "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum state" even when the defendant is aware the product may end up in the forum state. *Id*. at 112. Justice Brennan, with the agreement of three justices, determined the stream of commerce, as in "the regular and anticipated flow of products from manufacture to distribution to retail sale" is enough to establish jurisdiction if the defendant is aware the final product is being marketed in the forum state. *Id*. at 117.

---

[2] ASMC declared bankruptcy in March 2013. SMAI is now the exclusive distributor.

In 2011, the Supreme Court again addressed the issue in *J. McIntyre Machinery, Ltd., v. Nicastro*, 564 U.S. 873 (2011). In another plurality opinion, Justice Kennedy stated, to establish personal jurisdiction, there must be some action by defendant, purposefully directed towards the forum state, to which defendant avails itself of the privilege of conducting activities within the state; this may be established by the placement of goods in commerce where the defendant targeted the forum state. *Id*. at 877, 882. Justices Breyer and Alito disagreed, finding there is no personal jurisdiction where there is no regular course of sales in the forum state and there is no "something more" such as a special design, advertising, marketing or something else. *Id*. at 889. Because of the plurality opinions in *Asahi* and *Nicastro*, the Supreme Court has not conclusively determined the limits of the stream of commerce theory for specific jurisdiction.

The Eighth Circuit has determined "mere placement of a product into the stream of commerce, without more, does not constitute an act of the defendant purposefully directed toward the forum state" but jurisdiction may be found over a "foreign manufacturer that pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State trade area." *Viasystems, Inc. v. EBM-Pabst St. Georgen GMBH & Co.*, 646 F.3d 589, 597 (8th Cir. 2011) (internal quotations and citations omitted). An analysis of Eighth Circuit cases dealing with out-of-state defendants may guide the Court in applying Supreme Court precedent on this issue.

In *Barone v. Rich Brothers Interstate Display Fireworks Company*, the Eighth Circuit found the district court had personal jurisdiction over defendant. 25 F.3d 610 (8th Cir. 1994). The plaintiff was injured in a fireworks accident in Nebraska and he sued, among others, the manufacturer of the fireworks, Hosoya Fireworks Company, which was based in Tokyo, Japan. *Id*. at 610-11. Hosoya did not have an office, agent for service of process or distributor in

Nebraska and it did not advertise or directly send any of its products to Nebraska. *Id*. at 611.

Hosoya used nine distributors in six states, none of which were Nebraska, to distribute its

fireworks in the United States. *Id*. One of these distributors, Rich Brothers Interstate Display

Fireworks Company, sold fireworks in Nebraska through a regional salesman and through mail

catalogs. *Id*.

The Eighth Circuit held a manufacturer whose product ends up in a forum state on an

"attenuated, random, or fortuitous" basis has not purposefully directed its activities at the forum

state. *Id*. at 615. However, the Eighth Circuit found Hosoya made an effort to reach much of the

country through a limited number of regional distributors, including Nebraska. *Id*. at 613-14.

Therefore, it was "only reasonable and just that [Hosoya] should now be held accountable in the

forum of the plaintiff's choice" when Hosoya "reaped the benefits of its network of distributors."

*Id*. at 615. In reaching this conclusion, the Eighth Circuit analyzed the Supreme Court's opinion

in *Asahi* and found it "stands for no more than that it is unreasonable to adjudicate third-party

litigation between two foreign companies in this country absent consent by the nonresident

defendant." *Id*. at 614.

In *Vandalune v. 4B Elevator Components Unlimited*, the Eighth Circuit found the district

court had personal jurisdiction over defendant. 148 F.3d 943 (8th Cir. 19998). The plaintiff was

injured in a grain dust explosion while working at a grain elevator in Iowa. *Id*. at 945. He filed

suit against the manufacturer of the motion sensor on the grain elevator, Synatel Instrumentation

Limited ("Syntel"), located in Straffordshire, England. *Id*. Synatel sold the motion sensor to

Braime Elevator Components, Limited, based in Leeds, England, who sold it to an affiliate

located in Illinois. *Id*. The affiliate sold it to Keith's Complete Service, an Iowa company, who

installed the part on the grain elevator that injured plaintiff. *Id*. The Eighth Circuit found Synatel

designed the motion sensor for United States markets, agreed to distribute it through the Braime affiliate, shipped directly to the Braime affiliate, put its logo and identifying decal on each product, Syntel employees attended technical support meetings in Illinois, close to the Iowa border, and of the 619 motion sensors sold in the United States, 81 were sold in Iowa. *Id*. at 948. Therefore, it held personal jurisdiction was established because "these are not attenuated, random, or fortuitous contacts with the forum State." *Id*. "[W]hen a foreign manufacturer pours its products into a regional distributor with the expectation that the distributor will penetrate a discrete, multi-State area, the manufacturer has purposefully reaped the benefits of the laws of each State in that trade area for due process purposes." *Id*. (internal quotations omitted).

In *Guiness Import Company v. Mark VII Distributors, Incorporated*, the Eighth Circuit held the district court did not have personal jurisdiction over defendant. 153 F.3d 607 (8th Cir. 1998). This case involved the termination of an arrangement between a beverage importer and distributor. Desnoes & Geddes, Limited ("D & G") was a Jamaican beer brewer. *Id*. at 609. D & G used three importers to import their beer into the United States, who then contracted with distributors of their choosing. *Id*. at 610. The lawsuit was filed in Minnesota and D & G was added as a defendant. *Id*. at 609. The Eighth Circuit held there was no evidence D & G did anything in Minnesota, and it did not exercise control over the distribution of its products in the United States. *Id*. at 614. Further, the Eighth Circuit found D & G passed title to the beer in Jamaica and exercised no control over the beer, the importer, or the distributor once the beer left Jamaica. *Id*. at 615. Therefore, because D & G did not purposefully direct its activities at Minnesota, there was no personal jurisdiction in Minnesota over D & G, and the Due Process Clause was not satisfied. *Id*.

In *Clune v. Alimak AB*, the Eighth Circuit held there was personal jurisdiction over

defendant. 233 F.3d 538 (8th Cir. 2000). Joseph Clune was killed when he fell from a construction hoist in Kansas City, Missouri. *Id*. at 540. His decedents, the plaintiffs, sued the designer and manufacturer of the construction hoist, Linden-Alimak AB, a Swedish Corporation. *Id*. Linden-Alimak AB had exclusive distribution agreements with United States distributors. *Id*. at 543. From 1960 to 1970, B.M. Heede was the distributor. *Id*. at 540. From 1970 to 1974, B.M. Heede and Esco Corporation were the distributors, and from 1983-1988, Alimak, Incorporated was the exclusive distributor. *Id*. The hoist at issue was imported to the United States in 1972. *Id*.

The Eighth Circuit found Linden-Alimak AB created the distribution system that brought the hoist to Missouri. *Id*. at 543. Additionally, it designed the construction hoists for the United States market, had exclusive distribution agreements with United States distributors, displayed its logo on products, conducted training seminars in the United States, provided sales brochures and instruction manuals, and members of its board of directors also served as directors of its subsidiary, Alimak, Inc. *Id*. at 543-44. Between twenty and forty, of the 700 construction hoists sold in the United States by the distributors, ended up in Missouri. *Id.* All of these facts showed, according to the Eighth Circuit, Linden-Alimak AB "engaged in a series of activities that were designed to generate profits to the parent from its subsidiaries' sales across the United States." *Id*. at 544.Linden-Alimak argued there was no personal jurisdiction because it did not send its product into a regional distributor to penetrate a discrete multi-state trade area. *Id*. However, the Eighth Circuit rejected this argument stating:

> A foreign manufacturer that successfully employs a number of regional distributors to cover the United States intends to reap the benefits of sales in every state where the distributors market. Similarly, a foreign manufacturer that successfully employs one or two distributors to cover the United States intends to reap the benefit of sales in every state where those distributors market. The difference is one of form, not function, and the practical effect is the same.

*Id*. The Eighth Circuit held Linden-Alimak AB's creation of the system that brought the hoists to

Missouri established sufficient minimum contacts with Missouri to satisfy due process standards. *Id*. at 544-45.

Applying the conclusions of these Eighth Circuit cases, the Court finds there is personal jurisdiction in Missouri over SMC, because SMC created the distribution network that brought the subject ATV to Missouri. SMC employs one United States distributor, which it owns. SMC designs the ATV and SMAC assembles the ATV, according to the design of SMC. SMAC does not have the ability to change the design without permission from SMC. The ATVs are then sold to SMAI, previously ASMC, companies wholly owned by SMC, who sell the ATVs to independent authorized dealerships. Creating authorized dealerships in Missouri shows intent to penetrate the Missouri market, and reap the benefit of sales from the Missouri market. Additionally, the owner's manual provided with the subject ATV lists SMC as the copyright holder, and the website for Suzuki products, where consumers can find authorized dealers of Suzuki products, lists the copyright holder as SMC on some pages, SMAI on others. All of these facts lead the Court to conclude the subject ATV did not end up in Missouri on an "attenuated, random, or fortuitous" basis and SMC has the requisite minimum contacts with Missouri to satisfy due process standards.

SMC asserts the Court cannot apply the holdings of Eighth Circuit cases decided before *Nicastro*. But *Nicastro* was a plurality opinion which did not change the Eighth Circuit's precedent. Further, the Eighth Circuit did not adopt the conclusion in *Ashai*, because it was a plurality opinion, like *Nicastro*. *Barone*, 25 F.3d at 614. SMC also argues there is no personal jurisdiction because SMC did not rely on a regional distributor with the expectation it will penetrate a discrete, multi-State area. The Eighth Circuit explicitly rejected this argument in *Clune*, finding the difference between using one distributor to cover the entire United States and

using multiple regional distributors to cover the entire United States is one of form, not function. 233 F.3d at 544. Therefore, this Court must also reject these arguments.

      B.     *Service of Process*

SMC also challenges service of process, asserting Plaintiff's service on Bruce McCall and Carl Pesce does not constitute proper service of process, because they are not authorized to accept service on behalf of SMC. Plaintiff argues the service of process was proper and if not, the Court should order SMC's attorney to accept service on its behalf.

When service of process is lacking, a court lacks jurisdiction over the defendant. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 350 (1999). Federal Rule of Civil Procedure ("FRCP") 4(h) governs service of a corporation. Corporations within the United States may be served by delivering a copy of the summons and the complaint to an "officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . ." Fed. R. Civ. Pro. 4(h)(1)(B). Rule 4(h)(2) states service of a foreign corporation is prescribed by Rule 4(f). That rule states a corporation may be served "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention. . ." or "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. Pro. 4(h).

In this case, Plaintiff attempted to serve SMC in two ways. First, on July 26, 2017, at a deposition in this matter, Carl Pesce, an attorney representing SMAC in this matter, was served with the complaint and summons for SMC. Second, on July 26, 2017, Bruce McCall, a registered agent for SMAC, was served. Neither of these constitutes proper service on SMC. Mr. McCall is a registered agent for SMAC, not SMC. Although SMAC is a subsidiary of SMC, this relationship alone does not make SMAC a registered agent of SMC. *Dunakey v. Am. Honda*

*Motor Co., Inc.*, 124 F.R.D. 638, 639 (E.D. Mo. 1989) ("Standing alone, a parent/subsidiary relationship is not enough to render a parent subject to the Court's jurisdiction"). In an unpublished opinion, the Fifth Circuit Court of Appeals held a subsidiary may be capable of receiving service if the parent exercises such control over the subsidiary, the two are essentially one. *Lisson v. ING Groep N.V.*, 262 Fed. App'x 567, 570 (5th Cir. 2007). Plaintiff has not established SMC and SMAC are essentially one company. Therefore, service on Mr. McCall does not constitute proper service on SMC.

Plaintiff's service on Mr. Pesce is also not proper service. A party's attorney is not a registered agent authorized to accept service on behalf of the party simply by serving as the party's attorney. *Gibbs v. Hawaiian Eugenia Corp.*, 581 F. Supp. 1269, 1271-72 (S.D. N.Y. 1984). A court may authorize service on a defendant's lawyer, and it has occurred in the Eastern District of Missouri. *See Ackerman v. Global Vehicles U.S.A., Inc.*, No. 4:11CV687RWS, 2011 WL 3847427 (E.D. Mo. Aug. 26, 2011). However, here, Plaintiff did not seek authorization from the Court prior to serving SMC's attorney. Therefore, service on Mr. Pesce does not constitute proper service on SMC.

The Court will quash Plaintiff's service of process on SMC, but will not dismiss the case against SMC. *Sheely v. Gear/tronics Indus., Inc.*, No. 1:15CV00048 SNLJ, 2011 WL 4958083 at *3 (E.D. Mo. Aug. 19, 2015) (citing *Marshall v. Warwick*, 155 F.3d 1027, 1032-33 (8th Cir. 1998) (If service is ineffective, a court has discretion to either dismiss the action or quash service but retain the case.). Plaintiff asks the Court to order SMC's attorney to accept service on its client's behalf. Although it is not required to be a last resort for service, ordering an attorney to accept service for a client should be a rare occurrence. At this time, the Court will not order Mr. Pesce to accept service on behalf of SMC. Plaintiff has started the process to serve SMC in Japan

according to the requirements of the Hague Convention, and the Court will grant Plaintiff an extension of time of four months from the date of this order to accomplish that service of process. If service of process has not been accomplished by that time, the Court may reevaluate whether alternative methods of service of process are required.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Suzuki Motor Corporation's Motion to Dismiss [52] is **GRANTED**, **in part**, and **DENIED**, **in part**.

**IT IS FURTHER ORDERED** that Plaintiff shall effect service on Suzuki Motor Corporation no later than February 2, 2018.

Dated this 16th Day of October, 2017.

_____
E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE