UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| C.C., through his natural mother and | ) | |
| Guardian, MELANIE GINNEVER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:16CV1271ERW |
| | ) | |
| SUZUKI MANFUACTURING OF | ) | |
| AMERICA CORPORATION and | ) | |
| SUZUKI MOTOR COPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants' Motions to Exclude the Testimony of

Plaintiff's Experts Heather Cosby, Mariusz Ziejewski, and Joel Cheek [ECF No. 118, 105, &

108] and Plaintiff's Motions to Exclude the Testimony of Defendants' Experts Adam Wise,

Nathan Dorris, Michael Carhart, Michael Stevenson, and Robert E. Larson [ECF No. 104, 113,

121, 123, & 125].

I.      **BACKGROUND**

On August 4, 2016, Plaintiff C.C., through his natural mother and guardian Melanie

Ginnever ("Plaintiff"), filed a petition in the District Court of the Eastern District of Missouri,

asserting two counts against Defendants Suzuki Manufacturing of America Corporation

("SMAC") and Suzuki Motor of America, Inc. ("SMAI") for strict product liability and

negligence. ECF No. 1. Plaintiff's petition alleged he was injured when he lost control of the

ATV he was driving, the handlebar grip slipped off, causing the exposed handlebar to impale his

left leg, when the ATV tipped over. On August 26, 2016, Plaintiff voluntarily dismissed his

claims against SMAI. ECF No. 9. On June 21, 2017, Plaintiff filed an amended complaint,

asserting two counts against Defendants Suzuki Motor Corporation ("SMC") and SMAC

("Defendants") for strict product liability and negligence. ECF No. 41.

## II.     STANDARD

Rule 702 mandates a policy of liberal admissibility, and expert testimony is permitted if it

will assist the trier of fact in understanding the evidence or to determine a fact in issue. FED. R.

EVID. 702; *Lauzon v. Senco Prods., Inc.*, 270 F.3d 681, 686 (8th Cir. 2001). To be admitted

under Rule 702, proposed expert testimony must meet three prerequisites: 1) any evidence based

on scientific, technical or other specialized knowledge must be useful to the fact finder in

determining a fact in issue; 2) the proposed witness must be qualified to assist the fact finder;

and 3) the proposed evidence must be reliable or trustworthy in an evidentiary sense. *Id.;*

*Daubert v. Merrell Dow Pharm., Inc*., 509 U.S. 579, 590-93 (1993).[1]

A district court's goal in assessing expert testimony is to ensure that "all scientific

testimony is both reliable and relevant." *Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir.

2010) (quoting *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006)). The

reliability requirement means "the party offering the expert testimony must show by a

preponderance of the evidence both that the expert is qualified to render the opinion and that the

methodology underlying his conclusions is scientifically valid," while the relevance requirement

demands "the proponent must show that the expert's reasoning or methodology was applied

properly to the facts at issue." *Id.* (internal quotations and citations omitted).

Rule 702's requirements notwithstanding, "[c]ourts should resolve doubts regarding the

usefulness of an expert's testimony in favor of admissibility." *Marmo*, 457 F.3d at 758. This is

---

[1] The analysis provided in *Daubert* applies to all experts, not just scientific experts.  *Kuhmo Tire Co. v. Carmichael,*
526 U.S. 137 (1999).

because the Rule "only requires that an expert possess 'knowledge, skill, experience, training, or education' sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'" *Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (internal citation omitted). As such, "[g]aps in an expert witness's qualifications or knowledge generally go to the weight of the witness's testimony, not its admissibility." *Id.* at 1100-01.

## III.   DISCUSSION

Defendants filed three separate Motions to Exclude Expert Testimony of Plaintiff's Experts: Heather Cosby, Mariusz Ziejewski, and Joel Cheek. Plaintiff filed five separate Motions to Exclude Expert Testimony of Defendants' Experts: Adam Wise, Nathan Dorris, Michael Carhart, Michael Stevenson, and Robert E. Larson. The Court will address each motion, in turn.

Before each individual motion is addressed, the Court will address Plaintiff's argument this is a "crashworthiness," "second collision," or "enhanced injury" case and therefore, any expert opinions about the cause of the initial accident are inadmissible. An enhanced injury case is a case in which "a manufacturer's liability is extended to situations in which the construction or design of its product has caused separate or enhanced injures in the course of an initial accident brought about by an independent cause." *Dejana v. Marine Technology, Inc.*, No. 411CV1690, 2013 WL 1282327, at *3 (E.D. Mo. Mar. 26, 2013) (internal quotations and citation omitted). It is different from strict liability cases because "the defect would not have produced any injury in the absence of an intervening cause which sets the injury producing cycle into action." *Id.* In an enhanced injury case[2], any potential error committed by the Plaintiff which might have caused the initial accident is irrelevant and inadmissible under Missouri law. *See Gerow v. Mitch Crawford Holiday Motors*, 987 S.W.2d 359, 363 (Mo. Ct. App. 1999). However,

---

[2] Crashworthiness, second collision, and enhanced injury are all treated the same in Missouri case law.

in order to have a submissible enhanced injury case, Plaintiff must prove he was using the ATV in a "reasonably anticipated" manner. *Id.* at 362. Under Missouri law, misuse can be reasonably anticipated under the appropriate facts. *Polk v. Ford Motor Co.*, 529 F.2d 259, 266 (8th Cir. 1976) (applying Missouri law).

Plaintiff argues this is an enhanced injury case, and contends Mr. Wise, Mr. Larson, and Mr. Logue, Suzuki's corporate representative, do not dispute driving an ATV down a trail is an intended use of the ATV, and admit a rollover is foreseeable to the manufacturer during reasonably anticipated use. Because Mr. Wise, Mr. Larson, and Mr. Logue admit to these things, Plaintiff asserts his use of the ATV was reasonably anticipated as required by Missouri's enhanced injury doctrine. Therefore, Plaintiff contends the enhanced injury doctrine applies and Plaintiff's conduct which may have caused the accident is irrelevant and inadmissible.

Defendants argue this is not an enhanced injury case for two reasons. First, Defendants contend Plaintiff has not pled his enhanced injury theory. Second, Plaintiff's own experts do not treat this as an enhanced injury case. In fact, Dr. Ziejewski, one of Plaintiff's experts, testifies, if the grip had not come off, Plaintiff would have regained balance. Defendants argue whether Plaintiff could regain balance of the ATV depends on the factors leading up to the crash, such as speed, direction of the ATV, obstacles, rider position, whether there was a passenger on the ATV, and several other factors.

Defendants also argue pre-crash and crash causation evidence is required for the burden to prove defect, as Plaintiff must present admissible evidence to establish a defect in the subject ATV that actually caused his injuries. Defendants assert there are numerous variables that must be considered in order to prove the grip coming off was the result of defective glue, including the force necessary to remove the grip from the ATV and the force Plaintiff exerted on the grip as he

was driving. The only way to determine these forces, Defendants argue, is to consider the speeds at which Plaintiff was operating the ATV, the size of the ATV and operator(s), the path of travel, and obstacles that could have affected the ATV's movement.

Finally, Defendants argue pre-crash and crash causation evidence is necessary for Plaintiff to meet his burden to prove he was using the ATV in a reasonably anticipated or foreseeable manner. Defendants contend Plaintiff cannot show he was using the ATV in a reasonably foreseeable manner unless the manner in which he was using the ATV is explained. Additionally, Defendants assert Plaintiff mischaracterizes testimony and state both Mr. Larson and Mr. Wise opine the root and subsequent terrain Plaintiff tried to climb represents a significant obstacle and is not typical ATV terrain. Defendants also contend Mr. Logue explains Plaintiff operating the ATV the way he did is not the way the ATV was designed to be ridden.

Plaintiff has put the cause of the accident at issue with his expert Dr. Ziejewski who opines if the handlebar grip had not separated, Plaintiff would have had the opportunity to counterbalance the ATV. In order for the jury to understand this, they will also need to understand the other factors involved in this ATV accident, such as the speed and path of the ATV and whether there was a passenger on the back of the ATV. Additionally, these pre-crash factors are necessary to determine whether the glue was adequate to secure the handlebar grip of the ATV and are therefore relevant and necessary for the jury to consider. Finally, whether Plaintiff used the subject ATV in a reasonably foreseeable manner is a factual question for trial, and it would be premature to decide this, now. *See Dejana v. Marine Technology, Inc.*, No. 411CV1690, 2013 WL 1282327, at *4 (E.D. Mo. Mar. 26, 2013).

The Court does not find this is an enhanced injury case and the Court will not limit testimony on this basis.

*A. Plaintiff's Expert Heather Cosby*

Defendants ask the Court to exclude or limit the testimony of Plaintiff's expert, Heather Cosby. Defendants assert Ms. Cosby, a licensed clinical social worker ("LCSW"), is not qualified to medically diagnose Plaintiff with post-traumatic stress disorder ("PTSD") nor is she qualified to link the PTSD to the ATV accident or discuss how she will treat the PTSD, because she is not a medical doctor, certified psychiatrist, or psychologist. Defendants also assert Ms. Cosby's diagnosis is unreliable because she did not make the diagnosis after any psychological, neurological or other mental health testing as she was not legally allowed to do so. Finally, Defendants argue Ms. Cosby did not have the necessary background information about Plaintiff to make the correct diagnosis, because she did not meet him until 15 months after the subject crash and she did not review Plaintiff's medical, school, or medication records during her diagnosis of Plaintiff. Therefore, according to Defendants, her opinions, especially her opinion Plaintiff's previous mental health conditions worsened after the accident, lack sufficient factual support and are unreliable.

As a LCSW, Ms. Cosby has extensive experience in diagnosing and treating mental illnesses in children, including PTSD. After she obtained her bachelor's degrees in sociology and psychology from the University of Missouri in 2003, she earned a master's degree in social work from the University of Missouri-St. Louis, in 2006. While completing her master's degree, she participated in internships at two different places, Youth in Need and Child Center; both internships involved assisting in treatment of young patients with mental health disorders in a clinical setting, including patients who experienced mental health issues after traumatic events.

After Ms. Cosby's formal education, she applied and received her license in clinical social work in 2009. To earn her license, Ms. Cosby completed 3,000 hours of direct client

contact under supervision of an experienced LCSW and passed an exam. It took her two and a half years to complete the licensing process. The Missouri Supreme Court recognizes this license permits her " to evaluate persons and make diagnoses of mental disorders." *Johnson v. State*, 58 S.W.3d 496, 499 (Mo. 2001). After receiving her license in 2009, Ms. Cosby started working at River Birch Counseling, where she routinely diagnoses and treats children with mental health issues, including PTSD, after they suffer traumatic and serious physical and psychological injuries. Since she began practicing as a LCSW in 2009, Ms. Cosby has diagnosed and treated hundreds of patients with mental health disorders, including PTSD.

Defendant's assertion Ms. Cosby cannot and did not perform psychological, neurological or other mental health testing is correct. However, Ms. Cosby diagnosed Plaintiff with PTSD using the fifth edition of the Diagnostic and Statistical Manual of Mental Health Disorders ("DSM-V"), a manual on which those who clinically practice in the mental health field routinely rely. Additionally, Missouri has defined Ms. Cosby's practice area of clinical social work as:

> the application of social work theory, knowledge, values, methods, principles, and techniques of case work, group work, client-centered advocacy, community organization, administration, planning, evaluation, consultation, research, psychotherapy and counseling methods and techniques to persons, families and groups in *assessment, diagnosis, treatment, prevention and amelioration of mental and emotional conditions*

MO. REV. STAT. § 337.600(2) (emphasis added). The Supreme Court of Missouri has also explicitly allowed LSCW's, like Ms. Cosby, to evaluate and diagnose individuals with mental health disorders, which weighs in favor of finding her qualified to offer these opinions, unlike some other jurisdictions. *See Johnson*, 58 S.W.3d at 499; *see also Naquin v. Elevating Boats, LLC*, No. 10-4320, 2012 WL 1664257, at *7 (E.D. La. May 22, 2012) (LCSW prohibited from testifying because Louisiana law did not allow LCSWs to diagnose emotional or mental disorders); *Blackshear v. Werner Enterprises*,

No. 2004-4-WOB, 2005 WL 6011291, at *2 (E.D. Ky. May 19, 2005) (LCSW prohibited from testifying because Kentucky law did not permit LCSWs to diagnose emotional or mental disorders).

The Court is satisfied Ms. Cosby is sufficiently qualified to testify as an expert in this matter. While Ms. Cosby is not a medical doctor, certified psychiatrist, or psychologist who can perform certain testing, as a LCSW, who possesses a license that allows her to diagnose and treat mental disorders, she has extensive experience engaging in these activities. She made her diagnosis for a clinical purpose using the DSM-V and based it on the symptomology she observed when meeting with Plaintiff over 20 times. Each session lasted 45 minutes to an hour and Ms. Cosby took detailed notes of each session. Defendants' concerns regarding Ms. Cosby's failure to perform certain mental health testing and her lack of a medical degree may be addressed on cross-examination. *See Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006) (holding factual basis of expert opinions goes to credibility and not admissibility unless expert's opinion is "so fundamentally unsupported" it offers no assistance to the jury) (internal citation omitted).

Defendants' arguments regarding the reliability of Ms. Cosby's opinions are also more appropriately addressed in cross-examination than, here, in exclusion. While Ms. Cosby did not see Plaintiff until 15 months after the accident and did not review Plaintiff's medical records that address Plaintiff's history of psychological problems, Plaintiff's school records, or Plaintiff's medication history, she received information similar to what would be contained in those records from the Plaintiff's mother. Plaintiff's mother informed Ms. Cosby Plaintiff had been diagnosed with bipolar disorder

and ADHD and was having behavioral issues at school. Additionally, Plaintiff's mother provided Ms. Cosby with a list of Plaintiff's medications. From Ms. Cosby's conversation with Plaintiff's mother, Ms. Cosby understood Plaintiff was more stable before the ATV accident and his bipolar disorder was under control. Nothing in Ms. Cosby's testimony causes the Court to believe the basis of her opinions was unreliable. Therefore, Defendants' Motion to Exclude Proffered Expert Testimony of Heather Cosby will be denied.

### B. Plaintiff's Expert Mariusz Ziejewski

Defendants ask the Court to exclude or limit the testimony of Plaintiff's expert, Mariusz Ziejewski. Defendants assert Dr. Ziejewski performed no testing to confirm his theories about the subject ATV accident, did not have a reliable grasp of the facts, ignored many of the pertinent facts in reaching his opinions, and based much of his opinions on unsupported speculation and personal *ipse dixit*. Defendants argue these flaws show Dr. Ziejewski's analysis that forms the basis of his opinions is not an analysis in which a biomechanical engineer would engage, and should be excluded. Because Dr. Ziejewski did not perform any testing, Defendants argue there is also a lack of peer review in support of his analyses, no publication and no known rate or potential rate of error, making Dr. Ziejewski's opinions unreliable. Additionally, Defendants claim Dr. Ziejewski's opinions are further unreliable because he lacked knowledge of the Subject ATV and the facts of the accident. Finally, Defendants assert Dr. Ziejewski's lack of experience with ATVs renders him unqualified to offer his opinions.

Dr. Ziejewski is a mechanical engineer and biomechanic retained by Plaintiff to testify about the biomechanical effect of the handlebar grip coming off, the body position of Plaintiff

during the accident as a result of the handlebar grip coming off, the securement of the grip, and the impalement of Plaintiff by the handlebar.

Defendants raise concerns about each of Dr. Ziejewski's opinions. Dr. Ziejewski's first opinion is the unexpected handlebar grip separation eliminated the opportunity for Plaintiff to counterbalance the ATV and recover from the rollover ("Opinion #1"). His second opinion discusses how the exposed metal of ATV's handlebar impaled Plaintiff's groin area ("Opinion #2"). The third opinion, about Plaintiff's body movements during the subject accident, concludes if the handlebar grip had not come off, Plaintiff's body would have been in a different position and he would not have suffered the same injuries ("Opinion #3"). Dr. Ziejewski's fourth and final opinion states the contact forces would be decreased by approximately five times if the handlebar grip had stayed attached to the handlebar. Dr. Zjewski believes, due to the reduction in force, with the grip in place and the lack of a cutting edge, Plaintiff would not have suffered a puncture wound from the left handlebar ("Opinion #4").

Defendants argue Opinion #1 ignores Plaintiff's testimony the grip came off after he had lost control, contacted the tree root, and began tipping over. Additionally, Defendants contend Dr. Ziejewski has not completed testing nor has he performed any accident reconstruction to support his theory, and he did not consider any factors occurring up until just prior to the ATV contacting the tree root (such as the speed or path of the ATV, the effect of carrying a passenger, or riding habits). Defendants believe this makes his opinion unreliable.

Regarding Opinion #2, Defendants argue Dr. Ziejewski admitted, in his deposition testimony, his opinions are a restatement of information he reviewed in medical records, and he is not a medical doctor nor has he spoken with any of Plaintiff's medical providers. Defendants also contend this opinion adds no new analysis or expertise to assist the jury, but simply repeats

information already available from other sources. Defendants state Dr. Ziejewski has no sufficient bases to qualify him to offer testimony on Opinion #2.

Defendants emphasize Dr. Ziejewski's lack of testing and a sufficient basis for Opinion #3. They argue he admitted the basis of this opinion is the dynamics of the human body and his "general perception of body positioning as opposed to doing testing or performing an accident reconstruction." Finally, Defendants contend in Opinion #4, Dr. Ziejewski admitted he does not know the amount of force with which the handlebar contacted Plaintiff's leg during the accident and he did not do any testing to determine whether the presence of the left grip would have reduced contact force or prevented the claimed injury. Defendants also argue Dr. Ziejewski speculates an unknown amount of force would have been reduced by a factor of five. Because Dr. Ziejewski cannot quantify the force with which the handlebar impacted Plaintiff's leg, Defendants contend this opinion is based on speculation and should be excluded.

The Court is satisfied Dr. Ziejewski is qualified to testify as an expert in this matter. Defendants' concerns regarding Dr. Ziejewski's lack of experience with ATVs are more appropriate for cross-examination than exclusion. Additionally, the Court is satisfied Dr. Ziejewski has a sufficient basis to offer Opinion #1 and he may testify regarding how the handlebar grip coming off may have eliminated an opportunity for Plaintiff to counterbalance the ATV and recover from the rollover. Defendants' concerns regarding Dr. Ziejewski's lack of testing and his failure to consider the speed and path of the ATV, among other factors, in reaching his opinion are more appropriate for cross-examination than exclusion.

However, the Court will limit Dr. Ziejewski's testimony. He will not be allowed to testify as to Opinion #2, Opinion #3, or Opinion #4. He does not have a sufficient foundation or basis to offer Opinion #2 because he is not a medical doctor nor was he an eyewitness.

Therefore, he will not be allowed to testify regarding his opinion the exposed metal of the left-hand grip of the ATV impaled Plaintiff's left groin area on July 19, 2015. This fact can be determined by the jury without the aid of an expert witness. Additionally, Dr. Ziejewski does not have a sufficient basis to offer Opinion #3 and it is unreliable. His expert report is devoid of any methodology he engaged in to reach this opinion, and while Plaintiff argues Dr. Ziejewski engaged "textbook biomechanical engineering analysis," the description of this analysis is not persuasive, and the report indicates Dr. Ziejewski is simply speculating at how Plaintiff's body could potentially have moved during the subject accident. This opinion on how Plaintiff's body moved during the accident and how his position would have been different if the handlebar grip had stayed on is excessively speculative. Dr. Ziejewski will not be allowed to testify regarding any of the information in Opinion #3. *Oniyah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (expert testimony should be excluded when it is "excessively speculative") (internal quotations and citation omitted). Finally, Dr. Ziejewski does not have a sufficient basis to offer Opinion #4. Without quantifying how much force with which the handlebar impacted Plaintiff's thigh without the handlebar grip, it is impossible to determine how Dr. Ziejewski calculated the force would be five times less with the grip secured and upon what foundation the opinion is based. Without any testing or analysis to support this conclusion, Opinion #4 is excessively speculative and Dr. Ziejewski will not be allowed to testify about how the contact forces would be decreased by five times by a secured grip and whether Plaintiff would have suffered a puncture wound if the handlebar had not come off. This is for the jury to decide. Upon this record, Dr. Ziejewski's testimony would not be helpful to the jury. This motion will be granted, in part, and denied, in part.

   *C. Plaintiff's Expert Joel Cheek*

Defendants ask the Court to exclude or limit the testimony of Plaintiff's expert, Joel Cheek. Defendants assert Mr. Cheek, as a mechanical engineer, is not qualified to offer opinions about the design and manufacture of the handlebar grip because he has no relevant educational or work experience. Additionally, Defendants assert Mr. Cheek has not done any testing to support his criticisms of the handlebar grip design or the proposed alternative designs and did not know important facts pertaining to his opinions. Therefore, according to Defendants, his opinions lack sufficient support and are unreliable.

Mr. Cheek is the principal engineer at Small Vehicle Consulting LLC and has experience working with small vehicles, such as utility terrain vehicles ("UTV"s) and golf cars.[3] Defendants argue Mr. Cheek lacks experience in designing an ATV or a component part of an ATV, he has never gained work experience involving use of the glue at issue (Threebond 1521, also known as "TB1521") or handlebar grips on ATVs, and this is the first time he has consulted on ATVs, all of which make him unqualified to offer any of his opinions.

Plaintiff states Mr. Cheek, in his role at Club Car, Inc. from 1986 to 2000, routinely worked with glue. However, Mr. Cheek stated, in his deposition, while at Club Car, he "tried to use the types of glue on occasion" and he could not remember the type of glue Club Car attempted to use on those few occasions. Additionally, while Mr. Cheek did work for Yamaha Motor Manufacturing Corporation ("YMMC") for four years, YMMC was not responsible for the design of the handlebar and grips on Yamaha ATVs and he had no experience using glue to attach grips, while there. While at YMMC, Mr. Cheek signed drawings for handlebars and grips on ATVs, but he could not recall if any of the drawings specified the type of glue used to secure the grip. His work experience at Yamaha Motor Corporation ("YMC") is similarly devoid of active involvement with glue and handlebar grips. He even admitted during his deposition he

<hr>

[3] Golf cars are similar to golf carts, but golf carts are typically open on the sides while golf cars are enclosed.

could not "remember anything about the grips" and he "did not participate in a bench test of a grip" while at YMC. Instead, Mr. Cheek participated in endurance tests, which involved taking ATVs for "a few laps" for a total of five hours. Aside from Mr. Cheek's work experience, he reviewed the specification sheets for Cemedine 575, TB1521, and 3M-4799, which he found online, in order to form his opinion in this case.

The Court will limit the scope of Mr. Cheek's testimony. Because Mr. Cheek lacks adequate experience with handlebar grips and the types of glue on which he is attempting to offer sufficiency opinions, he will not be permitted to testify regarding whether TB1521 was "deficient replacement glue" for the ATV handlebar grips. *See* Fed. R. Evid. 702 (requires expert witnesses to be qualified by knowledge, skill, experience, training, or education); *see also Robinson v. GEICO Gen. Ins. Co.*, 447 F.3d 1096, 1100 (8th Cir. 2006) (internal citation omitted) (Rule 702 requires an expert to possess experience "sufficient to 'assist' the trier of fact, which is 'satisfied where expert testimony advances the trier of fact's understanding to any degree.'"). He will also not be permitted to testify regarding the sufficiency of the three types of glue to attach the handlebar grip to the handlebar of the ATV. Those three types of glue are: Cemedine 575, TB1521, and 3M-4799.

Defendants also argue Mr. Cheek's opinions are unreliable and he has no basis for offering them. One of the opinions Defendants contend should be excluded is the opinion TB1521 is defective in attaching the handlebar grips to the handlebar. Plaintiff asserts Mr. Cheek's opinion regarding the sufficiency of TB1521 is reliable because it is based on the handlebar grip's detachment from the handlebar in the subject incident, the four warranty claims, and Suzuki's own documents stating TB1521 did not bond well to the rubber grips. Plaintiff claims these are the undisputed facts of the case, and serve as an adequate basis for Mr. Cheek's

opinion. However, these facts are not undisputed, and Mr. Cheek must have a more reliable and sufficient basis for his opinion in order to testify and assist the "trier of fact." Even if Mr. Cheek were qualified to offer opinions regarding the sufficiency of TB1521, his opinion lacks a sufficient basis, because it is so fundamentally unsupported it will not help the jury, and is unreliable; therefore, he will not be permitted to testify regarding the sufficiency of TB1521, Cemedine 575, and 3M-4799. *See Minn. Supply Co. v. Raymond Corp.*, 472 F.3d 524, 544 (8th Cir. 2006); *see also* FED. R. EVID. 702 (requires expert witnesses' testimony to be based upon sufficient facts or data and to be the product of reliable principles and methods).

Another opinion Defendants state is unreliable and should be excluded is Mr. Cheek's claim the appearance quality standard encouraged line operators to err on the side of using minimal glue because the light brown color of the TB1521 glue would stand out against the black color of the handlebar grips. Plaintiff argues this opinion is reliable because it is based on the testimony of a Suzuki executive stating they changed the glue, in part, because it looked better and because there was no residual glue inside the subject handlebar grip, when he inspected it. Defendants contend even if there was no residual glue, *Daubert* does not allow the logical leap from no residual glue in a grip to a line operator using less glue because of color concerns.

The Court will limit Mr. Cheek's testimony surrounding the appearance quality issue. Mr. Cheek can testify generally about the color of TB1521, and how it would stand out against the black handlebar grip and potentially cause an appearance defect. However, Mr. Cheek will not be allowed to testify the appearance quality standard encouraged line operators at Suzuki to use less glue because the opinion has an insufficient basis and is unreliable. There are no facts to support this conclusion, and expert testimony should be excluded when it is unsupported by

sufficient facts or is "excessively speculative" as it is here. *Oniyah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (internal quotations and citation omitted).

Defendants also contend Mr. Cheek's opinions surrounding the cause of Plaintiff's injury and the cause of the accident (opinions A and B on Mr. Cheek's report)[4] are inadmissible because Mr. Cheek is not qualified to offer either of them and his conclusions are unreliable. Because Mr. Cheek is not a medical doctor, rendering him unqualified to give medical opinions, and his opinion Plaintiff was severely injured due to the grip unexpectedly coming off the end of handlebar (Opinion A) is duplicative of the testimony of other witnesses and the police/EMT reports. He will not be allowed to testify regarding the cause of Plaintiff's injury.

Additionally, Mr. Cheek's opinion that nothing about Plaintiff's use of the ATV contributed to the grip coming off the handlebar or to Plaintiff's injury (Opinion B) lacks an adequate basis and is excessively speculative. Specifically, Mr. Cheek states several factors, such as the speed of the ATV and whether there was a passenger on the ATV, did not contribute to the grip coming off the handlebar. However, Mr. Cheek did not conduct any accident reconstruction, computer simulations or a demonstrative regarding how he believes the accident occurred. Mr. Cheek also opines Plaintiff's age, the terrain, and the riding style did not contribute to the grip coming off the handlebar and the terrain upon which Plaintiff was riding the ATV was typical ATV terrain. In support of his conclusion about Plaintiff's age, Mr. Cheek mentions in his report the age limit of sixteen is arbitrary, and Plaintiff was reasonably experienced in ATV operation and was the approximate height and weight of an average adult male. This is not a sufficient enough basis for Mr. Cheek to rely upon in reaching his conclusion Plaintiff's age did not

---

[4] Opinion A states: "[C.C.] was severely injured due to the grip unexpectedly coming off the end of the handlebar." Opinion B states: "The terrain, speed of the vehicle, riding style, passenger, and age of [C.C.] did not contribute to the grip coming off the handlebar, and therefore did not contribute to [C.C.]'s injury. The way the subject ATV was used was reasonably anticipated and foreseeable. [C.C.]'s weight and hand grasp force should not have been enough to pull the grip off the end of the handlebar, even in a rollover situation."

contribute to the cause of the accident or the injury. Mr. Cheek's conclusion the terrain on which Plaintiff rode the ATV is typical ATV terrain will be permitted. He is sufficiently trained to offer testimony to help the jury decide this issue.

Mr. Cheek will not be allowed to testify whether the speed of the vehicle, riding style, passenger, and age of the Plaintiff did or did not contribute to the grip coming off the handlebar. He will also not be allowed to testify whether the age limit is "arbitrary" or "generally ignored" because he did not give a sufficient basis for this opinion. Mr. Cheek will be allowed to testify regarding whether the way the ATV was used by Plaintiff was reasonably anticipated and foreseeable. He will not be allowed to testify whether Plaintiff's weight and hand grip force would have been enough to pull the grip off.

Defendants' concerns regarding Mr. Cheek's knowledge of how the grips on the subject ATV were installed, the specifics of what happened during Mr. Cheek's inspection of the subject ATV, the lack of any studies or reports of claimed similar incidents, the dispute over whether the written procedures adequately describe where and how the glue is to be applied, Mr. Cheek's contradiction of one of Defendants' witnesses, and his lack of testing of his proposed handlebar design alternatives are more appropriate for cross-examination rather than exclusion. Nothing in Mr. Cheek's testimony, aside from what has already been excluded, causes the Court to believe these opinions are unreliable so as to require its exclusion from trial. The motion will be granted, in part, and denied, in part.

### D. Defendants' Expert Adam Wise

Plaintiff asks the Court to exclude or limit the testimony of Defendants' expert, Adam Wise. Plaintiff asserts Mr. Wise's opinions surrounding how and why the accident happened are irrelevant because this is an enhanced injury case and in an enhanced injury case, the cause of the

accident is generally inadmissible when the accident is foreseeable. Plaintiff also asserts Mr. Wise's opinions about the speed and the path of the ATV have no scientific basis because he performed no calculations in reaching his conclusions. The Court has ruled this is not an enhanced injury case.

Mr. Wise is a mechanical engineer and accident reconstruction expert. Plaintiff argues Mr. Wise did not perform an actual reconstruction based on calculations and scientific analysis, but rather he got together "with other defense experts and [rode] ATVs over rocks and other objects at the expert's office." Defendants contend Mr. Wise did much more than claimed by Plaintiffs, and listed the several activities in which Mr. Wise engaged to reach the majority of his opinions in this case, including, but not limited to, reviewing police reports, inspecting the subject ATV, inspecting and photographing the crash site, and conducting 3D laser scans of the site and surrounding terrain. While Mr. Wise did not perform calculations or a scientific analysis in reaching his conclusions, the procedure he used in reaching his opinions is well-documented. His inspections and demonstrations are either photographed or videotaped and he produced videos and diagrams that can be reviewed and verified by Plaintiff. Plaintiff's concerns about the lack of calculations or a scientific basis for Mr. Wise's opinions are more appropriate for cross-examination and the weight given to his testimony rather than admissibility.

However, the Court will limit Mr. Wise's testimony. Mr. Wise has not worked in the ATV industry, and while he does have extensive riding experience and history with ATVs, he did not clarify how many different brands of ATVs he has ridden or with which he has had experience. He has no scientific background or experience in glue analysis or application. Therefore, Mr. Wise lacks sufficient qualifications and will not be allowed to testify regarding how the use of adhesives to secure ATV grips is a common practice in the ATV industry. He will

be permitted to testify about his own experience in riding ATVs and how the grips were attached on the ATVs he has ridden, but he will not be allowed to testify about whether attaching grips with glue is a "common practice" in the ATV industry. Additionally, Mr. Wise will not be permitted to testify regarding the warnings and instructions for helmet use nor Plaintiff's lack of helmet use. This testimony is irrelevant because there are no alleged brain injuries and the failure to follow other relevant warnings is sufficient to establish Plaintiff's likely failure to heed future warnings. This motion will be granted, in part, and denied, in part.

### E.  Defendants' Expert Nathan Dorris

Plaintiff asks the Court to exclude or limit the testimony of Defendants' expert, Nathan Dorris. Plaintiff asserts Dr. Dorris's opinions are irrelevant, unhelpful, and are not connected to the facts of the case, and he is not qualified to offer some of them. Plaintiff states Dr. Dorris's opinion is simply Plaintiff did not obey warnings on the ATV and in the manual, and that is why the accident happened. Plaintiff argues this is irrelevant to the enhanced injury case because neither the cause of the accident nor the adequacy of the warnings is at issue. That argument is now irrelevant. Additionally, Plaintiff stresses Dr. Dorris's opinions will not help the jury because it is obvious if Plaintiff had heeded the warnings on the ATV, he never would have been on it in the first place, and the jury does not need an expert to enlighten them on these issues. Lastly, Plaintiff contends Dr. Dorris is not qualified to render opinions about Plaintiff's psychological or emotional well-being, and how it impacted his ability to drive the ATV, because he is not a psychologist, but rather a human factors expert. Plaintiff further alleges Dr. Dorris's opinion regarding Plaintiff's psychological or emotional well-being is irrelevant and should be excluded.

Defendants argue Dr. Dorris's opinions are relevant because Plaintiff's Amended Complaint alleges failure to warn under negligence and strict liability theories, and seeks punitive damages related to these claims. Plaintiff contends they will not present a claim at trial there should have been better warnings on the ATV or in the manual at the time of sale, but rather the failure to warn claim will be Defendants should have issued a warning or recall after they determined the glue did not work. In response, Defendants state Plaintiff did not plead the theory of post-sale failure to warn in their complaint, and even if they did, Missouri law does not recognize a duty to recall or retrofit or a post-sale duty to warn. urther, if the failure to warn claim survives, Defendants assert Plaintiff must establish the product caused Plaintiff's injuries and a warning would have altered the behavior of Plaintiff; therefore, Dr. Dorris's opinions about the adequacy of the warnings and Plaintiff's disregard for them are relevant because it shows the warning, whether pre-sale or post-sale, would not have altered Plaintiff's behavior.

This opinion will not address whether Plaintiff's failure to warn claim will be dismissed.[5] Plaintiff seemingly admits Dr. Dorris's opinions are relevant if their failure to warn claim is characterized as a claim there should have been better warnings on the ATV or in the manual at the time of sale. Assuming the failure to warn claim is recognizable as Plaintiff has characterized it (a post-sale duty to warn), Dr. Dorris's opinions regarding Plaintiff's failure to heed the warnings on the ATV are relevant because it will help the jury decide whether further warnings, including the post-sale warning or recall Plaintiff claims Defendants had a duty to issue, would have altered the behavior of Plaintiff, which is an element Plaintiff must prove. *See Bachtel v. Taser Intern., Inc.*, 747 F.3d 965, 970 (8th Cir. 2014). Dr. Dorris's opinions will aid the jury in deciding a necessary element of Plaintiff's failure to warn claims and, as a result, are helpful.

---

[5] This is addressed in the Court's decision on Defendants' Motion for Summary Judgment on All Counts of Plaintiff's Amended Complaint [ECF No. 110].

However, the Court will limit Dr. Dorris's opinions. First, when rendering his opinion regarding whether additional warnings provided by Defendants would have changed the behavior of Plaintiff, Dr. Dorris will not be allowed to testify about how "the evidence in this matter does not support a conclusion" different or additional warnings would have altered Plaintiff's behavior. His testimony will be limited to whether he thinks Plaintiff's behavior would have been changed by a different or additional warning and the reasons supporting his conclusion. He cannot mention "the evidence does not support" a certain conclusion because that is a decision reserved for the jury. He also will not be allowed to testify regarding the warnings and instructions for helmet use or Plaintiff's lack of helmet use. This testimony is irrelevant because there are no alleged brain injuries and the failure to follow other relevant warnings is sufficient to establish the basis for Dr. Dorris's opinion Plaintiff would not obey additional warnings.

Additionally, Dr. Dorris will not be allowed to testify regarding Plaintiff's behavioral and impulsivity issues and how it impacted his ability to operate an adult-sized ATV, because the opinion is not based on scientific data. Further, this opinion is not relevant and seems to be an attempt to place the blame for the accident on Plaintiff's parents, a non-party, for letting him drive the ATV. Dr. Dorris's testimony will be limited to his expertise surrounding the reasons why a sixteen year age limit has been imposed. Lastly, Dr. Dorris will not be allowed to testify regarding his criticisms of Joel Cheek's testimony because Mr. Cheek has been prohibited from giving the opinions Dr. Dorris criticizes. This motion will be granted, in part, and denied, in part.

F. *Defendants' Expert Michael Carhart*

Plaintiff asks the Court to exclude or limit the testimony of Defendants' expert, Michael Carhart. Plaintiff asserts Dr. Carhart's opinion Plaintiff could have received the same injury even

if the handlebar grip had stayed on is contrary to the actual facts of the case, and in some areas lacks any reliable factual basis. Additionally, Plaintiff contends Dr. Carhart's alternate theories lack sufficient scientific support and are inherently speculative. Plaintiff also argues several of Dr. Carhart's other opinions, including his opinion the handlebar grip cannot come off the ATV and someone tampered with the handlebar grip prior to the incident, are unsupported by the facts of the case and are unscientific. Lastly, Plaintiff contends Dr. Carhart's litigation-based testing used to form his opinions is unscientific and unreliable.

Dr. Carhart, a biomechanical engineer, performed extensive testing and analysis to form his opinions and reach his conclusions. He performed and videotaped riding tests through an exemplar crash site, which was based on 3-D site scan data. He also conducted riding demonstrations, surrogate pull tests, and several other important evaluations too numerous to list. This testing and analysis generated documented and detailed results, which Plaintiff can review and verify. Dr. Carhart's opinions generally focus on whether Plaintiff's recollection of the events of the subject crash is consistent with scientific analysis and whether Plaintiff's version of the facts is physically possible. Because Plaintiff must prove there was a defect and the defect caused his injury, these opinions offered by Dr. Carhart are relevant. *See Bachtel v. Taser Intern., Inc.*, 2013 WL 317538, at *4 (E.D. Mo. Jan. 28, 2013). His opinions will help determine whether the grip coming off was due to insufficient glue, which is the basis of Plaintiff's design defect claim, or for some other reason. This goes to the heart of what Plaintiff must prove.

The Court is satisfied Dr. Carhart's opinions have adequate support and he can testify about them as an expert in this matter. Plaintiff's concerns about the reliability of Dr. Carhart's testing, his contradiction of eyewitness testimony (which Plaintiff argues is undisputed fact; however, the facts identified by Plaintiff are disputed), and his reliance on case reports may be

addressed on cross-examination. Plaintiff's arguments about the rarity of one of Dr. Carhart's alternate theories of causation and dissimilarities between the conditions of the subject ATV and the exemplar ATV tested by Dr. Carhart are also more appropriate for cross-examination rather than exclusion. Nothing in Dr. Carhart's testimony causes the Court to believe his testing was unreliable to require its exclusion from trial. This motion will be denied.

### G. Defendants' Expert Michael Stevenson

Plaintiff asks the Court to exclude or limit the testimony of Defendants' expert, Michael Stevenson. Plaintiff asserts Dr. Stevenson's opinions contradict the undisputed facts of the case and his testing is too dissimilar from the conditions of the accident, rendering his testing unreliable. Additionally, Plaintiff argues Dr. Stevenson's central opinion, that the handlebar grip could not have come off during the incident without some kind of interference with the originally installed factory grip, is unreliable, irrelevant, and contrary to the facts of the case. Plaintiff also contends Dr. Stevenson's opinions surrounding the marks on the switch assembly are baseless, unsupported by the facts, and misleading. Lastly, Plaintiff asserts Dr. Stevenson's testing to support his opinion TB1521 glue is sufficient in securing the handlebar grips is unreliable.

Dr. Stevenson is a metallurgical and materials engineer who was retained by Defendants to determine the amount of force it would take to remove an OEM grip from an OEM handlebar in order to address Plaintiff's claim TB1521 glue was inadequate to secure the rubber grips. In order to do this, he tested six total exemplar handlebars and grips, three grips with glue according to SMAC's procedure for applying TB1521 and three grips with no glue. He detailed the materials used in his expert report, which included exemplar handlebars and grips from SMAC and an exemplar glue applicator brush. Additionally, Dr. Stevenson evaluated witness marks on the switch assembly near the left grip and opined these marks are consistent with someone using

a screwdriver to attempt to loosen the grips. He either photographed or videotaped all of his testing and provided the documentation to Plaintiff, so Plaintiff can evaluate the testing and results.

The Court is satisfied Dr. Stevenson's opinions have adequate support and are relevant; therefore, he can testify about them as an expert in this matter. Plaintiff claims TB1521 was inadequate to secure the rubber grips. Accordingly, determining how difficult it is to remove the grips, which Dr. Stevenson attempted to do with his testing, is relevant. Additionally, Plaintiff's concerns regarding Dr. Stevenson's contradiction of eyewitness testimony (again, Plaintiff claims the facts derived from this testimony are undisputed; however, these facts are in dispute), the issues surrounding the force testing with the grips, when and how the marks on the switch assembly got there, and Dr. Stevenson's methodology for determining the marks were consistent with someone prying on the left grip with a tool are appropriate for cross-examination rather than exclusion. Nothing in Dr. Stevenson's testimony causes the Court to believe his testing regarding the force it takes to remove a handlebar grip or regarding the marks on the switch assembly was unreliable so as to require its exclusion from trial. This motion will be denied.

*H. Defendants' Expert Robert E. Larson*

Plaintiff asks the Court to exclude or limit the testimony of Defendants' expert, Robert E. Larson. Plaintiff asserts Mr. Larson's opinions, like Mr. Wise's opinions, relate solely to the cause of the initial accident and are, therefore, irrelevant to this enhanced injury case. Additionally, Plaintiff argues Mr. Larson ventures beyond the bounds of his expertise and offers opinions in areas covered by Defendants' other experts, and in which he is not qualified to give opinions, rendering his opinions unnecessarily cumulative and unreliable. Plaintiff also argues Mr. Larson's accident reconstruction opinions are unnecessarily cumulative, as Mr. Wise

testifies largely about the same things. Lastly, Plaintiff contends Mr. Larson's testimony lacks sufficient support and is directly contrary to the facts of the case, and should be excluded.

Mr. Larson is a mechanical engineer and has experience in accident reconstruction, vehicle dynamics, handling, stability, and safety systems for various vehicles, including ATVs. Plaintiff argues Mr. Larson's experience does not qualify him to offer opinions about design, warnings, human factors, and biomechanics. Specifically, Plaintiff contends Mr. Larson is not qualified to offer opinions about the warnings on the ATV, whether the grip was adequately attached, whether Plaintiff's cousin J.J. was on the back of the ATV when the accident occurred, and the effect J.J.'s presence on the back of the ATV would have had on the accident if he was in fact on the ATV. Finally, Plaintiff claims Mr. Larson's opinions surrounding whether the grip was loose before the accident and the markings on the switch assembly are baseless and unsupported.

Defendants argue Mr. Larson is qualified to offer opinions about warnings in the context of ATV safety due to his certification from the ATV Safety Institute and experience with safety systems for ATVs. Additionally, Defendants contend Mr. Larson is qualified to offer opinions about what is common practice for ATV manufacturers and whether the handlebar grips were adequately secured, because he is an ATV riding expert and enthusiast, has decades of ATV experience, and has experience analyzing ATV performance by riding in any number of conditions while holding on to the grips.

Defendants also argue Mr. Larson is qualified to discuss whether J.J. was on the back of the ATV and what effect his presence would have on the accident even though it involves biomechanics because his opinions focus on more gross level biomechanics and he has an extensive biomechanical background. This background includes working in biomechanical labs

and coursework for his master's degree, additional biomechanics courses since obtaining his masters in mechanical engineering, his job at Exponent including analyzing biomechanical issues related to vehicle stability, and publishing an article on biomechanics. Defendants also contend Mr. Larson's opinion J.J. was still on the ATV is an accident reconstruction opinion and he is qualified to testify regarding accident reconstruction issues.

Finally, regarding Mr. Larson's opinions surrounding the markings on the switch housing, Defendants claim Mr. Larson has a sufficient basis for opining the markings are indicative of using a screwdriver to pry at the grip. Defendants state Mr. Larson applied his experience as a mechanical engineer and ATV rider that has been around ATVs professionally and personally for decades to reach his conclusion and claim this is sufficient.

The Court is satisfied Mr. Larson is sufficiently qualified to testify as an expert in this matter. While Mr. Larson does not have a formal degree in biomechanical engineering, nor is he a human factors expert, he has sufficient experience in each area to offer opinions regarding the disregarding of warnings, J.J.'s reaction time and how his presence would affect the ATV during the accident. Plaintiff's concern regarding Mr. Larson's qualifications to offer opinions about warnings or biomechanical issues is appropriate for cross-examination rather than exclusion. However, the Court will limit Mr. Larson's testimony. He will not be allowed to testify about how the use of adhesive glues to secure rubber grips to handlebars "is common practice for ATV manufacturers." Additionally, he will not be allowed to testify about whether the design of using adhesive glues is adequate, nor about whether the handlebar grips were adequately secured on the subject ATV with its design.

While Mr. Larson does have experience riding ATVs, he has not worked in the ATV manufacturing industry and is not qualified to offer opinions about what is common among

manufacturers. His riding experience also does not qualify him to testify about the adequacy of glues in securing rubber handlebar grips. *Daubert* does not allow for the logical leap from the handlebar grips secured by glue staying on as Mr. Larson rode some ATVs to the conclusion glue is adequate in securing handlebar grips. He may testify regarding the ATVs he has ridden and how those handlebar grips were secured, if he knows, and whether the grips stayed on the handlebar of the ATV as he rode it, but he may not testify about a common practice among ATV manufacturers.

Additionally, Mr. Larson will not be allowed to testify about whether the markings on the switch assembly are indicative of using a screwdriver to pry at the grip because it lacks a sufficient basis. Mr. Larson simply looked at the markings, and based the conclusion on his experience in riding ATVs. The conclusion Mr. Larson reached involves speculation, and expert testimony should be excluded when it is unsupported by sufficient facts or is "excessively speculative" as it is here. *Oniyah v. St. Cloud State Univ.*, 684 F.3d 711, 720 (8th Cir. 2012) (internal quotations and citation omitted).

Lastly, Mr. Larson's accident reconstruction opinions are duplicative, in many respects, of Mr. Wise's and could be unnecessarily cumulative. Expert testimony is unnecessarily cumulative when "there is 'substantial overlap' between the areas on which two experts will testify." *Royal Bahamian Ass'n, Inc. v. QBE Ins. Corp.*, No. 1021511, 2010 WL 4225947, at *2 (S.D.Fla. Oct. 21, 2010) (internal citation omitted). However, "[t]estimony on the same topic by different experts…is not needlessly cumulative where the experts will testify from different perspectives." *Id.* (internal citations omitted). Generally speaking, experts testify from different professional perspectives when they work in different professions. *See, e.g.*, *Mendez v. Unitrin Direct Prop. & Cas. Ins. Co*., No. 806cv563T24, 2007 WL 2696795, at *1–*2 (M.D.Fla.

Sept.12, 2007) (two experts permitted to testify regarding the same issue because one was an expert on an insurer's legal duties to its insured and the other was a claims handling expert). Mr. Larson and Mr. Wise are both mechanical engineers, and offer similar opinions, such as the subject ATV did not cause this accident, the ATV was not designed to have more than one person on it, and the disregard for certain warnings, among others. Mr. Larson and Mr. Wise will not be allowed to testify to the exact same accident reconstruction opinions. Mr. Larson will be permitted to testify to opinions not covered by Mr. Wise. This motion will be granted, in part, and denied, in part.

**IT IS HEREBY ORDERED** that Defendants' Motion to Exclude the Testimony of Plaintiff's Expert, Heather Cosby [ECF No. 118], and Plaintiff's Motions to Exclude the Testimony of Defendants' Experts Michael Carhart and Michael Stevenson [ECF No. 121 & 123] are **DENIED.**

**IT IS FURTHER ORDERED** that Defendants' Motions to Exclude the Testimony of Plaintiff's Experts Mariusz Ziejewski and Joel Cheek [ECF No. 106 & 108] and Plaintiff's Motions to Exclude the Testimony of Defendants' Experts, Adam Wise, Nathan Dorris, and Robert E. Larson [ECF No. 104, 113, & 125] are **GRANTED, IN PART, AND DENIED, IN PART**.

So Ordered this 14th Day of August, 2018.

_____
**E. RICHARD WEBBER**
**SENIOR UNITED STATES DISTRICT JUDGE**